Dear Secretary McDaniel
You have requested an opinion of this Office regarding the proper procedure for the disposal of vehicles left flooded and abandoned by Hurricanes Katrina and Rita. Specifically, you ask whether the Louisiana Department of Environmental Quality ("DEQ") has the authority to remove and properly dispose of these flooded and abandoned vehicles. Based on the following analysis, we opine that DEQ, under the specific circumstances herein, does have the authority to remove and dispose of flooded and abandoned vehicles. This authority derives from several sources, as are discussed in more detail, infra, including: (1) the Louisiana Homeland Security and Emergency Assistance and Disaster Act; and (2) Act Number 662 of the 2006 Regular Session of the Louisiana Legislature. We further opine that DEQ should follow the procedures outlined in La.R.S. 32:475 and Act 42 of the 2005 First Extraordinary Session of the Louisiana Legislature when disposing of said vehicles.
Background
The pertinent factual background accompanying your request states that subsequent to Hurricanes Katrina and Rita in 2005, DEQ participated in several emergency meetings to discuss, among other things, the environmental concerns posed by the approximately 350,000 vehicles which were flooded and abandoned as a result of the 2005 hurricane season. Due to DEQ's technical expertise and its availability of resources, DEQ was tasked with and agreed to handle management of the contracts for removal and disposal of those vehicles located on public property, public rights of way, or on private property where the owner granted access for removal. Funding for this process was to be provided by the Federal Emergency Management Agency through the Governor's Office of Homeland Security and Emergency Assistance and Preparedness ("GOHSEP"). You further note that the total number of vehicles currently being stored in three separate locations by contractors is 9,364. In addition, 85 trailers of different types are also being stored along with the vehicles. *Page 2 
Louisiana Law Under a State of Emergency, Generally
Before delving into the specific issues raised by your request, it is important to first discuss the unique situation created by the 2005 hurricane season, and Louisiana's ensuing response. Hurricanes Katrina and Rita wrought havoc on Louisiana's coastal parishes. The levee systems protecting the residential communities in these parishes were overwhelmed and inundated. Hurricane Katrina made landfall on the Louisiana coast on the morning of August 29, 2005, as a Category 3 hurricane, with sustained winds of 125 mph (205 km/h) near Buras-Triumph, Louisiana.[1]
Approximately one month after Hurricane Katrina, Hurricane Rita made landfall on September 24, 2005, near the Texas-Louisiana border as a Category 3 hurricane.
Pursuant to State of Louisiana Proclamation Nos. 48 KBB 2005 and 53 KBB 2005, Governor Kathleen B. Blanco declared states of emergency in Louisiana as a result of these storms. The purpose of these proclamations was to first give governmental authorities time to prepare for the hurricanes, and in the aftermath of the storms, to allow them ample opportunity to address the damage and destruction caused by Hurricanes Katrina and Rita.[2]
It is important to note that under Louisiana's Homeland Security and Emergency Assistance and Disaster Act, La.R.S. 29:721, et seq
(hereinafter sometimes referred to as the "Disaster Act"), upon a declaration of an emergency or disaster by the Governor the State's emergency response and recovery program under the command of the director of GOHSEP is activated. La.R.S. 29:724. Simply put, once the Governor declares a state of emergency the provisions of the Disaster Act go into effect and remain in effect until such time that the state of emergency is terminated. Thus, for purposes of this opinion, since the state of emergency has been extended until April 07, 2007, the provisions in the Disaster Act and the powers and duties of the Governor and GOHSEP must be analyzed in conjunction with other relevant State and federal laws. *Page 3 
Jurisdiction and Authority Over Flooded and Abandoned Vehicles
A. The Disaster Act
There are several provisions of Louisiana's Disaster Act that are applicable to the determination of whether DEQ has the authority to remove and dispose of flooded and abandoned vehicles. As a starting point, upon the declaration of a state of emergency, the Act provides the Governor with several powers that enable her to "[meet] the dangers to the State and people presented by emergencies or disasters." La.R.S.29:724(A). Indeed, the stated purpose of the Act, as outlined in subsection 722, is to ensure that the State is in a position to "respond to, or recover from these events, and generally preserve the lives and property of the people . . ." As applied to this specific situation, the Governor is given the authority to "utilize all available resources of the State government" and to "transfer the direction, personnel, or functions of State departments and agencies or units thereof for the purpose of performing or facilitating emergency services." La.R.S. 27:724(D). Thus, even if DEQ does not have the authority absent an emergency to dispose of abandoned vehicles, the Governor is authorized to transfer that authority to DEQ if she determines that such a transfer is necessary to promote the recovery of the State.
Furthermore, the director of GOHSEP is also authorized to coordinate the activities of all State agencies and organizations and otherwise cooperate with agencies and organizations of other states and of the federal government. La.R.S. 29:725. In fact, the chain of command created by the Disaster Act places the director of GOHSEP directly under the direction and control of the Governor and requires that all State agencies and departments comply with the directives from GOHSEP relating to emergency planning and operations. Id.
Consequently, DEQ first acquired the authority to act as the agency responsible for the removal and disposal of flooded and abandoned vehicles when GOHSEP tasked it to handle the management of such activities. As verification of this assignment, attached to your opinion request is a letter from GOHSEP to DEQ Secretary Mike McDaniel, dated February 2, 2007, which states, in pertinent part:
 This is to confirm that, in the aftermath of these two catastrophic events, the Louisiana Department of Environmental Quality (LDEQ) was designated as the state agency having jurisdiction and authority for removal and disposal of all unclaimed, abandoned vehicles and unclaimed, abandoned/grounded vessels, whether situated on private or public property, as a result of one or both hurricanes. This designation was made pursuant to the provisions of La.R.S. 29:721, et seq.
Thus, this Office is of the opinion that the Disaster Act, along with the above referenced letter, provide support for the conclusion that DEQ possesses the legal authority to remove and dispose of all flooded and abandoned vehicles remaining on private or public property as a result of the 2005 hurricane season. *Page 4 
B. Act No. 662 of 2006 Regular Session and DEQ's Debris Mission
The Disaster Act is not the only Louisiana law lending support for DEQ's authority over abandoned hurricane damaged vehicles. In September of 2005, DEQ prepared a Hurricane Katrina Debris Management Plan.[3]
Additionally, during the 2006 Regular Session of the Louisiana Legislature, Act 662 was passed. This Act tasked DEQ with the development and implementation of a comprehensive debris management plan (hereinafter sometimes referred to as the "debris mission"). The purpose of such a plan was the facilitation of a "reasonable, efficient, and prompt recovery from natural disasters that will be protective of human health and the environment." La.R.S. 30:2413.1, as enacted by Act No. 662 of the 2006 Regular Session of the Louisiana Legislature. It is also important to note that Act 662 required that the plan be consistent with State and federal law and not supercede any ordinance adopted by a local governing authority. Id. DEQ utilized portions of its 2005 Debris Management Plan in conjunction with the dictates of Act 662 to create the "Comprehensive Plan For Disaster Clean-up and Debris Management."[4]
Because this plan was mandated by the Louisiana Legislature, DEQ's authority to respond to clean-up of hurricane debris, including the removal and disposal of flooded and abandoned vehicles, is fully supported by the laws of this State. In fact, the letter from GOHSEP confirming DEQ's authority states, "[i]n addition, LDEQ's jurisdiction was recognized as part of the agency's hurricane debris mission." The letter goes on to state that:
 This designation and authorization were made in full consultation and agreement with other agencies and offices of affected state and federal government, including the Governor's Office of Homeland Security and Emergency Preparedness, the Louisiana Department of Justice, the Louisiana Department of Transportation and Development, the Louisiana Department of Public Safety, the Louisiana Department of Wildlife and Fisheries, the Louisiana Recovery Authority, the United States Coast Guard, and the Federal Emergency Management Agency. All federal, state, and local debris mission partners were asked to provide assistance, cooperation, and consultation to the LDEQ consistent with their mandates/authorities/jurisdictions and LDEQ was to continue to coordinate with its federal, state, and local government partners.
See GOHSEP letter dated February 2, 2007.[5] Therefore, as to the question of whether DEQ has the legal authority to remove and dispose of abandoned hurricane damaged vehicles, the answer is in the affirmative and is supported by Louisiana law under both *Page 5 
Title 29 and Act 662. It is important to note that DEQ continues to be responsible for cooperating and coordinating its recovery activities with all other federal, state, and local debris mission partners. The question of whether that has properly been done is a factual one, outside the scope of this opinion.
Proper Procedure for the Removal and Disposal of Abandoned Vessels
The determination of whether DEQ has the authority to dispose of abandoned vehicles and the proper procedure to be followed for such disposal is important because FEMA requires strict adherence with local, state, and federal laws in order to secure reimbursement for expenses.[6]
Thus, because you stated in your request that funding for the management of vehicles would be provided by FEMA, it is prudent that DEQ remain in compliance with all laws during the process.
La.R.S. 32:475 provides for the proper procedure to be used when removing and disposing of abandoned vehicles. The procedure is, generally, as follows:
 (1) Once a vehicle is declared to be abandoned[7] by the department[8], DEQ must send a registered or certified letter, return receipt requested, to the last known owner of the vehicle. La.R.S. 32:475(A).
 (2) The notice must inform the registered owner to remove the vehicle within ten working days from the date of receipt of the notice. Id.
 (3) DEQ must also notify the owner of the option of completing a certificate of authority giving to DEQ the authority to remove and dispose of the vehicle. Id.
 (4) If the vehicle is not removed within ten working days, DEQ may remove and dispose of the vehicle. La.R.S. 32:475(B).
Louisiana Revised Statute 32:476 governs the procedure required for the sale of abandoned vehicles. However, during the 2005 First Extraordinary Session, the Louisiana Legislature enacted Act 42. This Act created, among other things, La.R.S. 32:707.3(C), which provides, in pertinent part: *Page 6 
 (1) Notwithstanding any other law to the contrary, no motor vehicle for which a certificate of destruction has been issued shall be later issued a salvage or reconstructed title or otherwise titled or registered by the office of motor vehicles for use on the roads or highways of this state.
 (2) Notwithstanding any other law to the contrary, no motor vehicle which has been issued a certificate of destruction shall be resold as a retail unit, and such vehicle shall be dismantled, sold for any usable parts, or crushed.
This Act also defined "certificate of destruction" to mean a type of certificate of title issued by the office of motor vehicles for a "water-damaged vehicle", which was defined by the Act as any vehicle. . . whose power train, computer, or electrical system has been damaged by flooding as the result of a gubernatorially declared disaster or emergency. As a result of Act 42, the procedure outlined in subsection 476 is inapplicable to the present situation, as none of the 9,364 flooded and abandoned vehicles under the control of DEQ can legally be sold for reuse as a retail unit. Indeed, according to your request, these vehicles will be remediated,[9] crushed, shredded, and the recoverable metal sold for recycling. The money received from the sale of the scrap metal will then be returned to FEMA.
Conclusion
In conclusion, this Office is of the opinion that pursuant to the powers granted to the Governor and GOHSEP under the Louisiana Homeland Security and Emergency Assistance and Disaster Act as well as the debris mission developed by DEQ pursuant to the mandate of Act Number 662 of the 2006 Regular Session of the Louisiana Legislature, DEQ does possess the necessary legal authority to act as the agency responsible for the removal and disposition of flooded and abandoned vehicles. During the removal and disposition process, DEQ must follow the procedure outlined in La.R.S. 32:476 and Act 42. Specifically, DEQ must notify the Department of Public Safety and ensure that each vehicle is issued a certificate of destruction. DEQ must also ensure that the registered owners of the vehicles are notified of the existence of the abandoned vehicle and must be provided with an opportunity to remove the vehicle themselves. If removal does not take place within the statutory time frame, or if the owner decides to give to DEQ the authority to dispose of the vehicle, DEQ may have the vehicle removed, remediated, crushed, and sold for recycling.
We hope that this sufficiently answers your inquiry, however if we may be of further assistance please do not hesitate to contact our Office. *Page 7 
Yours truly,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By:__________________________ Megan K. Terrell Assistant Attorney General
[1] Knabb, Richard D.; Rhome, Jamie R.; Brown, Daniel P. (December 20, 2005). Tropical Cyclone Report Hurricane Katrina: 23-30 August 2005 (http://www.nhc.noaa.gov/pdf/TCR-AL122005 Katrina.pdf). (PDF) NationalHurricane Center. Last visited on 03/05/2007.
[2] Proclamation No. 48 KBB 2005 was issued to respond to the threat of Hurricane Katrina and has been in effect since August 26, 2005. Furthermore, pursuant to State of Louisiana Proclamation No. 23 KBB 2007 the State of emergency has been extended through April 18, 2007. Proclamation No. 53 KBB 2005, which implements a State of emergency as a result of Hurricane Rita, has been in effect since September 20, 2005 and has been extended through April 18, 2007, in accordance with State of Louisiana Proclamation No. 24 KBB 2007.
[3] This plan was released on September 28, 2005, and revised on October 14, 2005.
[4] The latest revision of this plan occurred in August 2006. A copy of this plan can be found at
http://www.deq.louisiana.qov/portal/portals/0/news/pdf/DEQDebrisPlan-8-25-FINAL.pdf.

Site last visited on March 1, 2007.
[5] On file with the Louisiana Department of Justice.
[6] For a more detailed discussion of FEMA policies on reimbursement,see, La. Atty. Gen. Op. No. 05- 0373.
[7] An "abandoned motor vehicle" is defined as a motor vehicle that is inoperable and is left unattended on public property for more than three days, or is inoperable and left unattended on the shoulder or right-of-way of an interstate or a four-lane highway for more than three days, or a motor vehicle that has remained illegally on public property for a period of more than three days, or a motor vehicle that has remained on private property without the consent of the owner or person in control of the property for more than three days. La.R.S. 32:471(1).
[8] Although the statute defines "department" as the Louisiana Department of Public Safety, note tha pursuant to the discussioninfra, the Governor is authorized to transfer the functions of State agencies during a declaration of an emergency and that such a transfer was perfected here, as evidenced by the February 2, 2007 letter from GOHSEP to DEQ.
[9] Oil, fuel, antifreeze, the battery, mercury switches, tires, and other components that could affect the environment are removed and properly disposed or recycled.